Brown, Appellant, *v.* Jones.

Argued April 24, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*John P. McKenna,* with him *Drew J. T. O'Keefe,* for appellant.

*Frank R. Ambler,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, July 17, 1961:
On the evening of December 29, 1954, Mrs. Elsie C. Brown purchased at an A. & P. store in Bryn Mawr, Lower Merion Township, such an abundance of groceries that four large shopping bags were needed to contain them, and the services of a grocer's clerk were required to assist in carrying the cargo. The clerk hauled

three of the bags in a shopping cart called a "store glider," while Mrs. Brown carried the fourth bag in her left hand, as she clutched in her right hand an open umbrella since it was now raining. Her destination was her home, located on Elliott Avenue on the southern side of Lancaster Avenue on which the store abutted.

Instead of moving westwardly on Lancaster Avenue to Elliott Street where she could have crossed over Lancaster Avenue at a regular intersection, she and her escort proceeded diagonally across Lancaster Avenue between intersections because of the smooth driveways on either side of this thoroughfare which afforded smooth trackage for the store glider.

As Mrs. Brown and the clerk approached the middle of Lancaster Avenue, they saw a truck coming on from the west and they stopped close to the center line to let the truck go by. At the same time a car was advancing from the east. The clerk signalled this car (being operated by the defendant Gordon Hyde Jones) to stop, but as the driver manifested no intention of stopping, the clerk stepped over the center line in order to avoid being hit. At this moment, or shortly before, the defendant, according to his explanation, was blinded by the high beams of cars coming toward him. He then saw the white coat of the grocer clerk and then the silhouette of Mrs. Brown. The car struck Mrs. Brown, inflicting upon her serious injuries.

Mrs. Brown brought an action in trespass against Jones and the jury returned a verdict for the defendant. The plaintiff moved for a new trial which the lower court refused and this appeal followed.

In his charge to the jury, the trial judge said: "Now the mere fact that the plaintiff was injured on this evening does not prove anything so far as you are concerned, except there was just another one of those unfortunate accidents which take place upon our high-

way, and you will draw no inference in itself from the happening of an accident . . .

"Now if Mrs. Brown was negligent in the slightest degree that evening, and if her negligence was part of the natural and probable cause of the damages which she suffered, injuries she suffered, then under our law she cannot recover damages, because *she must show you that she exercised the prudence and care of an ordinarily prudent person at that time . . .*" (Emphasis supplied.)

It would seem that the judge was seeking to be very fair to the defendant. Assuming perhaps that the plaintiff with her injuries, and the fact that she was a self-supporting widow, might appeal to the sympathies of the jury which might return a verdict based on emotion rather than reason, the trial judge leaned over backward to prevent an injustice being done the defendant. However, in doing this, the judge, figuratively speaking, leaned back so far that he lost balance and fell into the camp of active partisanship.

A disinterested reading of the judge's charge inevitably creates the impression, without, of course, the judge intending to give that impression, that he favored the defendant's side of the case. While a trial judge has the right to express his views regarding a controverted event he must explain to the jury that they and they alone are to determine responsibility for the mishap which is the subject of the lawsuit. And in no event must the judge place upon either party a burden of proof not countenanced by the law.

In charging on contributory negligence the trial judge said: "And before Mrs. Brown can recover in this case the law places on her a very definite burden. She must show you by the weight or the fair preponderance of the evidence that she has a right to recover. In order to show you she has a right to recover she must show you first of all that the defend-

ant Mr. Jones was guilty of negligence; and the plaintiff must also show you, if you find there was negligence on the part of the defendant, the *plaintiff is obliged to show you a case which is free from contributory negligence on her part."* (Emphasis supplied.)

This instruction is error. Mrs. Brown had no burden to disprove contributory negligence. She was not "obliged" to show that she was free from contributory negligence.

It is settled law in this Commonwealth that the defendant has the burden of proving contributory negligence. In *Good v. Pittsburgh,* 382 Pa. 255, 260, this Court said: "The plaintiff in a negligence action, of course, has the burden of establishing by a preponderance of the evidence the fault of the defendant as the proximate cause of the injury in suit. On the other hand, *the burden of proving the plaintiff guilty of contributory negligence falls squarely on the defendant."* (Emphasis supplied.)

Of course, if the plaintiff, in presenting a case of negligence against the defendant, reveals factors which convict him or her of contributory negligence, he or she may not recover, but such a situation is far different from saying that the plaintiff must affirmatively establish that there was an absence of contributory negligence.

When the trial judge said, as heretofore indicated, that the plaintiff "must show you that she exercised the prudence and care of an ordinarily prudent person at that time," he placed upon her an improper burden. The plain import of this charge was that Mrs. Brown had to produce certain positive evidence to establish that she exercised prudence and care. The absence of such objective evidence could lead the jury to believe, under these instructions, that the plaintiff had failed with her case. But everyone is presumed to exercise prudence and care until the contrary is shown or

charged. The love of life and the desire to be free of pain are as much a part of every human being's equipment as his five senses. Thus, no plaintiff is required to produce medical evidence that he has the normal use of his senses until, of course, that possession is questioned by word, deed, or circumstance.

Still leaning backward, the trial court said: "Now the crossing of a highway is a hazardous thing. A traveled highway at night in a rainy condition is a perilous place. You are not allowed to place yourself in a position of peril, and under the law if you want to collect damages from anyone while in that position of peril *you have got to act like a prudent person would under those circumstances*. And the question for you to determine is whether Mrs. Brown at that time and place acted as a prudent person would under her description of what happened and according to what Mr. O'Donnell said as to the happening of the accident." (Emphasis supplied.)

Here again the court suggested that the plaintiff had to prove affirmatively that she was a prudent person. The fact that Mrs. Brown crossed between intersections would not of itself declare Mrs. Brown an imprudent person. In *Shuman v. Nolfi,* 399 Pa. 211, 213, we said: "It is not negligence per se for a pedestrian to cross a highway or street in the middle of the block . . . In doing so a pedestrian has a perfect right to rely on the exercise of reasonable care by the drivers of automobiles on the highway." But the trial court in the case at bar charged in such a manner as to suggest, that while one is allowed to cross between intersections he has the burden to prove that what he did was proper.

Of course, one may not cross between intersections or even at intersections without exercising due care, but whether that care has been manifested or not, in a case like the instant one, is a question of fact for the

jury after it has been adequately instructed as to the standard of care it must apply.

The trial court affirmed the defendant's following point for charge: "A pedestrian who crosses a street between intersections is required to exercise a higher degree of care for her own safety while motorists are correspondingly held to a lesser degree of care and are not obliged to have their vehicles under instant control."

Such a rule exists but it does not apply where the pedestrian has been on the highway a sufficient period of time for the motorist to see him and act to avoid striking him. As stated in *Purdy v. Hazeltine,* 321 Pa. 459, 461: "The driver cannot, however, carelessly inflict injuries on users of highways between crossings. His duty is governed entirely by the circumstances of whether he saw such persons in the way in time to avoid hitting them, or whether he should anticipate their acts when they have committed themselves to a dangerous position."

The evidence in the plaintiff's case showed she was on the highway for a sufficient period of time to be seen by the defendant. She, with her escort, as already stated, had, while traveling with a four wheeled cart, moved to the center of the highway in full view of traffic from both directions. She was carrying an umbrella which enlarged the object of visibility to motorists and the grocer's clerk was wearing a white cloak which reached to his knees, making him quite conspicuous in the beams of any headlight.

Since this case is to be retried, it is in order to point out that the court's charge should be corrected in still another respect. The court said: "Temporary blinding caused by the bright lights of an on-coming automobile may constitute a legally sufficient excuse for failing to see and stop within the assured clear distance

ahead. . . A driver is not bound to stop merely because he is 'blinded' by the headlights of another vehicle."

This language could lead a jury to believe that under no circumstances is a driver required to stop when "blinded." In the case at bar the defendant was not confronted with traffic ahead or behind him; he was passing in front of a large supermarket. Whether under those circumstances, in the exercise of reasonable care, he should not have stopped his vehicle, was a question of fact for the jury, and the question should have been presented with appropriate instruction.

Reversed with a venire facias de novo.

Mr. Justice BELL and Mr. Justice BENJAMIN R. JONES dissent.